UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N<u>o</u> 09-CV-5248 (JFB) (ARL)
_____

NEIL FISHMAN, ET AL.,

Plaintiffs,

VERSUS

RICHARD F. DAINES, M.D., ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
October 15, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Neil Fishman ("Fishman") and Suruj Sirikeshun ("Sirikeshun") bring this putative class action against defendants Richard Daines ("Daines") and John Paolucci ("Paolucci"). Defendant Daines is the Commissioner of the New York State Department of Health. Defendant Paolucci is the Deputy Commissioner of the Office of Temporary Family and Disability Assistance ("OTDA") of the New York State Department of Family Assistance.

This case concerns the procedures by which defendants deem a Medicaid appellant's claim to be abandoned. By way of background, when a person's request for Medicaid benefits is denied or when a current Medicaid recipient's benefits are reduced or terminated, federal law entitles the person to a "fair hearing." In New York State, defendants are responsible for administering these hearings. Under the current state regulations, defendants do not provide a Medicaid appellant who misses a scheduled hearing with any notice of their default. Instead, the appellant's claim is considered abandoned and is accordingly dismissed unless the appellant contacts OTDA within a specified time frame and meets other requirements. In short, the current system in New York State, which plaintiffs refer to as the "automatic default and dismissal policy," places the onus on the Medicaid appellant to determine that he missed a hearing and to contact OTDA to attempt to re-schedule a hearing.

Additionally, plaintiffs contend that,

although defendants instruct Medicaid appellants to use a phone line to request fair hearing adjournments, it is often difficult or impossible to get through on this line.

Plaintiffs contend that the automatic default and dismissal policy and the phone line violate, *inter alia*, their Fourteenth Amendment due process rights, their right to a fair hearing under the Medicaid statute and its implementing regulations, and their rights under New York State Law and the New York State Constitution. They seek declaratory and injunctive relief on behalf of themselves and all others similarly situated. Defendants have moved to dismiss. For the reasons that follow, the Court grants the motion in part and denies it in part.

As a threshold matter, defendants contend that the Eleventh Amendment bars plaintiffs' claims. The Court disagrees with respect to plaintiffs' federal claims. Specifically, it is undisputed that the challenged policies remain in effect. Additionally, plaintiffs seek declaratory and injunctive relief to obtain, among other things, the re-scheduling of the hearings they missed. As such, plaintiffs' federal-law claims fit squarely within the *Ex parte Young* doctrine, which allows a plaintiff to sue state officials—such as defendants—in their official capacities for prospective relief from ongoing violations of federal law. The Eleventh Amendment does, however, bar plaintiffs' state-law claims because a federal court may not issue declaratory or injunctive relief against state officials based on state-law violations.

The Court also determines that the mootness doctrine does not bar the named plaintiffs' claims. Although both Sirikeshun and Fishman are currently receiving some Medicaid benefits, it is undisputed that they were without Medicaid benefits for a time as a result of having been deemed to have defaulted their fair hearings. Thus, there is still a live dispute between the parties as to whether the plaintiffs should have been receiving Medicaid for a given period. Furthermore, the Court can still grant plaintiffs effectual, prospective relief by ordering defendants to give plaintiffs a re-hearing on plaintiffs' Medicaid appeals. Granting this relief would not run afoul of the Eleventh Amendment because it would not automatically entitle plaintiffs to money damages and because the alleged violations of federal law are on-going.

Defendants also argue that the complaint should be dismissed because there is no private right of action under the provisions of the Medicaid statute on which plaintiffs rely. The Court disagrees and finds, as numerous other courts have similarly concluded, that 42 U.S.C. § 1396a(a)(3) gives plaintiffs a right to a fair hearing that is enforceable through 42 U.S.C. § 1983. Furthermore, plaintiffs may rely on the implementing regulations and the State Medicaid Manual, a document published by the federal Department of Health and Human Services, to define the scope of this right. The Court need not determine whether another statute plaintiffs rely on, 42 U.S.C. § 1396a(a)(1), confers a private right of action because the factual basis of plaintiffs' claim (and the relief sought) under that statute is essentially duplicative their § 1396a(a)(3) claim.

The Court also rejects defendants' argument that plaintiffs have not stated a plausible claim for relief with respect to the automatic default and dismissal policy. The allegations in the complaint raise a plausible

2

claim that the policy deprives plaintiffs of their due process rights under the Fourteenth Amendment and their fair hearing rights under § 1396a(a)(3). As to plaintiffs' allegations regarding the phone line, the Court finds that these allegations are also sufficient to survive a motion to dismiss.

I. BACKGROUND

A. Factual Background

For purposes of this motion to dismiss, the Court has taken the facts described below from the plaintiff's Complaint ("Compl."). These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

1. The Parties

The named plaintiffs in this putative class action are Neil Fishman and Suruj Sirikeshun.

The defendants are Richard F. Daines, the Commissioner of the New York State Health Department ("State DOH"), and John Paolucci, the Deputy Commissioner of Operations and Support for the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance ("State OTDA"). (Compl. ¶¶ 19-20.)

2. Overview of the Medicaid System

Medicaid is a cooperative federal-state program which assists the poor in "'meet[ing] the costs of necessary medical services.'" (Compl. ¶ 21 (quoting 42 U.S.C. § 1396).) A state does not have to participate in Medicaid. If it chooses to participate, however, it must comply with all the requirements of the Medicaid Act and all implementing regulations promulgated by the Department of Health and Human Services ("HHS"), the federal agency that administers Medicaid. (*See id.* ¶ 22.) Among other things, the State must submit a "Medicaid State Plan" to the federal government for approval. (*Id.* ¶ 24.)

New York State has chosen to participate in the Medicaid program. (*Id.* ¶ 23.) The State Department of Health is responsible for submitting New York's Medicaid State Plan to the federal government, establishing Medicaid eligibility standards, promulgating applicable regulations, maintaining a system of administrative hearings, and issuing final decisions in administrative appeals. (*Id.* ¶ 28.) The State OTDA also assists in overseeing the Medicaid program by, among other things, hearing administrative appeals and making findings and recommendations to the State DOH. (*Id.* ¶ 29.) Fifty-eight social service districts administer Medicaid at the local level. (*Id.* ¶ 27.) The local social service districts determine whether or not a person is eligible for Medicaid and, thus, may decide to deny or terminate coverage if certain criteria are met. (*See, e.g.*, Compl. ¶¶ 50-51.)

3. The Medicaid Appeals Process and the Fair-Hearing Requirement

a. Federal Law and Regulations

Under federal law, when a person's claim for Medicaid assistance is denied or not acted upon with reasonable promptness, the state must "'provide . . . an opportunity for a fair

3

hearing before the State agency . . . ." (*Id.* ¶ 31 (quoting 42 U.S.C. § 1396a(a)(3)).) The Court will refer to this hearing process as a "Medicaid appeal." Federal regulations require that the state's hearing system "'meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970)' and the additional standards specified in 42 C.F.R. Part 431." (*Id.* ¶ 32 (quoting 42 C.F.R § 431.205(d)).)

Among other things, the applicable federal regulations allow a state to dismiss a Medicaid appeal if the appellant "'fails to appear at a scheduled hearing without good cause.'" (*Id.* ¶ 33 (citing 42 C.F.R. § 431.223).) The State Medicaid Manual ("the Manual"), a document published by HHS's Centers for Medicare and Medicaid Services, suggests that this standard is met only when the state agency notifies the appellant that he missed the hearing and the appellant fails to respond. Specifically, the Manual states that a Medicaid appeal should be considered abandoned when (1) a claimant or his representative fails to appear and (2) "'if within a reasonable time (of not less than 10 days) after the mailing of an inquiry as to whether he wishes any further action on his request for a hearing[,] no reply is received.'" (*Id.* ¶ 35 (quoting State Medicaid Manual § 2902.3(B).) Plaintiffs contend that the statute, the implementing regulations, and the Manual preclude defendants from dismissing Medicaid appeals based on an appellant's failure to appear unless the appellant is given notice of his default and fails to respond to that notice.

b. New York Regulations

In contrast to the procedure in the Manual, New York's regulations currently contain no post-default notice requirement. New York did require a post-default notice between 1969 and 1989, but changed its policy for reasons that are unclear. (*See id.* ¶¶ 7-11; 39.)

Under the current New York regulation, a Medicaid appeal is considered abandoned if there is (1) a failure to appear, and (2) the appellant or his representative neither (a) contacts the state agency within 15 days of the scheduled hearing and provides good cause for the failure to appear nor (b) contacts the state agency within 45 days of the hearing and establishes that he never received notice of the scheduled hearing date. (*Id.* ¶ 38 (citing 18 N.Y.C.R.R. § 358-5.5).)

4. Plaintiffs' Claims

Plaintiffs label New York's current policy the "automatic default and dismissal policy." The Court will use this term for purposes of this motion. Plaintiffs contend that the automatic default and dismissal policy violates their (1) due process rights under the Fourteenth Amendment; (2) the "fair hearing" requirement set out in the Medicaid statute and amplified by the implementing regulations and the Manual; (3) the Medicaid statute's state-wideness provision (*see infra*); (4) the U.S. Constitution's Supremacy Clause, and (5) the New York State Constitution and New York State law.

As noted above, in addition to the lack of post-default notice, plaintiffs also take issue with a telephone line that defendants administer ("the fair-hearing telephone line"). Plaintiffs allege that defendants instruct Medicaid appellants to call this line if they want an adjournment of their hearing but that the line is essentially inoperable. Plaintiffs assert that the line also violates due process, the fair hearing requirement, and New York

4

State law.

Plaintiffs seek, *inter alia*, (1) preliminary and permanent injunctions prohibiting defendants from dismissing the administrative appeals of Medicaid appellants who are not given at least ten days to respond to a written notice from defendants inquiring if their appeals have been abandoned; (2) a declaratory judgment that the automatic default and dismissal policy violates due process, the Medicaid statute, the statute's implementing regulations, and New York State law and that federal law preempts the policy; and (3) an order requiring defendants to identify all Medicaid appellants who have defaulted since December 1, 2006, notify all such Medicaid appellants of their right to reschedule their defaulted fair hearings, and provide improved access to the fair-hearing telephone line.

5. Facts Regarding the Named Plaintiffs

a. Neil Fishman

Plaintiff Neil Fishman is mentally disabled. (*Id*. ¶ 46.) In 2005, the Nassau County Department of Social Services ("DSS")—the agency that administers Medicaid in Nassau County—notified Mr. Fishman that his existing Medicaid coverage would be terminated because his resources exceeded Medicaid's limits. (*Id.* ¶ 51.) DSS made this decision because it determined that a "Special Needs Trust" ("the Trust") established for Mr. Fishman by his mother was invalid, and, thus, Mr. Fishman had current access to the money used to fund the trust. (*Id.* ¶ 50.)

Mr. Fishman's attorney then requested a fair hearing to contest the termination of coverage. (*Id.* ¶ 52.) Eventually, the hearing was scheduled for August 8, 2007. However, before that date, the parties were able to resolve the issues with the Trust and agreed that Mr. Fishman's Medicaid benefits would be retroactively reinstated. (*Id.* ¶ 54.) Mr. Fishman's counsel requested that the Nassau DSS attorney sign a joint letter informing the hearing officer that the parties had settled the matter and that the appeal hearing was therefore not necessary. (*Id.* ¶ 55.)

However, according to the complaint, the Nassau DSS attorney did not sign the joint letter and, unbeknownst to Mr. Fishman or his attorney, the hearing was not adjourned. Mr. Fishman missed the hearing, and his appeal was therefore dismissed as an "appellant default." (*Id.* ¶ 58.) Thus, Mr. Fishman's Medicaid coverage was not reinstated, and he remained without coverage when the complaint in this case was filed. (*Id.* ¶ 60.) Significantly for purposes of this case, neither Mr. Fishman nor his counsel were notified that he had defaulted the administrative appeal. (*Id.* ¶ 58.)

b. Suruj Sirikeshun

Plaintiff Suruj Sirikeshun ("Sirikeshun") suffers from various ailments including diabetes, asthma, venuous insufficiency, and mental illness. (*Id.* ¶ 63.) On May 11, 2007, the New York City Human Resources Administration terminated his Medicaid benefits without notice or explanation. (*Id.* ¶¶ 65-66.) Mr. Sirikeshun asked defendants to schedule a fair hearing to contest the termination. (*Id.* ¶ 67.)

Defendants scheduled a hearing for July 2, 2007. (*Id.* ¶ 68.) Mr. Sirikeshun failed to appear at his scheduled hearing, and defendants dismissed his appeal as an

5

"appellant default." (*Id.* ¶ 71.) According to the complaint, defendants never notified Mr. Sirikeshun that his appeal had been dismissed. (*Id.* ¶ 72.) In October 2007, Mr. Sirikeshun again contacted defendants to request a fair hearing to contest the termination of his Medicaid benefits. (*Id.* ¶ 74.) A hearing was scheduled for October 31, 2007, and Mr. Sirikeshun attended this hearing. (*Id.* ¶ 76.) However, the hearing officer told him that his default of the July 2, 2007 fair hearing precluded him from a second fair hearing on the same issue and instructed him to withdraw his request for a second fair hearing. (*Id.*) Although the City Human Resources Administration ultimately reinstated Mr. Sirikeshun's Medicaid coverage, he is liable for his own medical expenses between May 11, 2007—the date his benefits were terminated—and March 31, 2008—the day before his coverage was reinstated. (*Id.* ¶ 77.)

B. Procedural History

Plaintiffs filed the complaint in this action on December 1, 2009. Simultaneously, plaintiffs sought class certification and preliminary class-wide relief. On February 8, 2010, this Court set a schedule for discovery on plaintiffs' class-certification motion. Thereafter, defendants moved to dismiss on March 22, 2010.

After the briefing schedule on the motions was extended several times, the motion to dismiss was fully submitted on July 8, 2010, and the Court heard oral argument on July 19. At that time, the Court notified the parties that it would resolve the class certification and preliminary relief motions after resolving the motion to dismiss. Plaintiffs made additional submissions regarding the motion to dismiss on July 30, 2010 and October 4, 2010. The Court has fully considered the parties' arguments.

II. STANDARD OF REVIEW

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining that the plausibility requirement "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted)).

III. DISCUSSION

Defendants argue that the Court should dismiss the complaint on the following grounds: (1) plaintiffs' claims are barred by the Eleventh Amendment; (2) there is no private right of action under the sections of the Medicaid statute cited by plaintiffs; and (3)

plaintiffs have failed to state a claim that their due process and fair hearing rights were violated.

### A. Justicability and Jurisdictional Questions

The Court first addresses defendants' Eleventh Amendment argument. Additionally, although defendants do not explicitly raise the issue of mootness, a mootness argument underlies part of their Eleventh Amendment argument. Accordingly, because the Court is independently obligated to examine its whether it has subject-matter jurisdiction, it also examines the mootness issue below. In short, neither the Eleventh Amendment nor mootness bars plaintiffs' federal claims. The Eleventh Amendment does, however, bar plaintiffs' state-law claims.

#### 1. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "'The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns. . . .'" *State Emps Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 20 (2d Cir. 2004)).

##### a. *Ex parte Young*

However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court announced a limited exception to this rule. Under the *Ex parte Young* exception, "'a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.'" *Rowland*, 494 F.3d at 95 (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)). To determine whether a plaintiff's complaint falls within this exception, a court asks (1) "'whether [the] complaint alleges an ongoing violation of federal law'", and (2) whether it "'seeks relief properly characterized as prospective.'" *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, there is no question that the first element is met. Plaintiffs argue that certain aspects of the Medicaid appeal process—specifically, the automatic default and dismissal policy and the fair hearing telephone number—violate the U.S. Constitution and the Medicaid statute. The automatic default and dismissal policy remains in effect today, and the allegedly troublesome phone line procedure is still being used. *Cf. Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (finding declaratory and notice relief barred by Eleventh Amendment where there was no "'claimed continuing violation of federal law'" or "'threat of state officials violating the repealed law in the future'" (quoting *Green v. Mansour*, 474 U.S. 64, 73 (1985))); *see also, e.g.*, *Hatem v. Schwarzengger*, No. 04 Civ. 1944 (GEL), 2004 WL 1192355, at *2 n.3 (S.D.N.Y. May 27, 2004) (distinguishing *Ward* because complaint alleged that challenged state policy was still in effect).

7

Thus, the complaint alleges an ongoing violation of federal law.

The complaint also seeks relief "properly characterized as prospective." In determining how to properly characterize relief, courts are to focus on the "nature of [the] requested relief, not the label placed on it." *See N.Y. City Health & Hosps. Corp. v. Perales*, 50 F.3d 129, 135 (2d Cir. 1995). Thus, even when a complaint seeks declaratory or injunctive relief, the *Ex parte Young* doctrine will not apply if the effect of that relief would be equivalent to a money judgment against the state. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 278 (1986) ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else." (footnotes and internal citations omitted)). For example, in *Edelman v. Jordan*, 415 U.S. 651 (1974), one of the seminal cases on this issue, the plaintiffs brought an action against state officials, alleging that the officials' actions in administering a cooperative federal-state program—Aid to the Aged, Blind, or Disabled (AABD)—violated federal law. The district court issued (1) a permanent injunction requiring defendants to comply with federal time limits for processing and paying AABD applicants, and (2) ordered state officials to release and remit to certain applicants AABD benefits that had been wrongfully withheld. The Supreme Court held that the permanent injunction was permissible under the Eleventh Amendment, but that the order to remit benefits was not.

*See* 415 U.S. at 664-65. The Court explained that, even though the order to remit benefits could be labeled "equitable" relief, the award required "the payment of state funds" and thus was essentially an award of damages against the state. *Id.* at 668.

Here, by contrast, if plaintiffs win, the relief they get will not be equivalent to a money judgment against New York State. Plaintiffs seek (1) injunctive relief prohibiting defendants from continuing to employ the automatic default and dismissal policy; (2) a declaratory judgment that the policy is unlawful; (3) a judgment ordering defendants to identify defaulting Medicaid appellants and notify them of their right to fair hearings; and (4) an order requiring defendants to provide improved telephone access. Although it is possible that the State defendants might have to ultimately pay benefits to some potential class members, none of these requested forms of relief will automatically entitle any class member to monetary damages. The class member will still have to (1) choose to attend a fair hearing; (2) attend the hearing; and (3) have the hearing officer determine that he is entitled to Medicaid benefits. *Cf. Quern v. Jordan*, 440 U.S. 332, 347-48 (1979) (explaining Eleventh Amendment did not bar relief because "the chain of causation" leading to money damages against the state "contains numerous missing links, which can be supplied, if at all, only by the State and members of the plaintiff class and not by a federal court"); *ASW v. Oregon*, 424 F.3d 970, 974 n.4 (9th Cir. 2005) (finding that request for declaratory relief regarding unlawfulness of state regulation regarding payments to families who adopt children did not violate Eleventh Amendment because relief would "not resolve Oregon's liability for any withheld funds. As the State concedes, should

8

Plaintiffs seek monetary damages, they would need to bring individual contract claims against the State . . . .").[1]

In sum, plaintiffs in this case are (1) suing individual state officers in their official capacities; (2) alleging that the challenged policies, which are still in effect, violate federal law; and (3) seeking injunctive and declaratory relief as a remedy. Under these circumstances, plaintiffs' federal claims fit easily within the *Ex parte Young* exception. *Cf. Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 381-82 (S.D.N.Y. 2000) (finding "[p]laintiffs' claims . . . [fell] squarely within the *Ex Parte Young* exception" where "Plaintiffs have named state officials, not the state itself, as defendants[;] allege that the state officials are violating and continue to violate federal laws, including the Fourteenth Amendment to the Constitution[; and] seek prospective injunctive relief, and not retroactive money damages, against the State defendants" (footnotes and internal citations omitted)); *see also Cramer v. Chiles*, 33 F. Supp. 2d 1342, 1350 (S.D. Fla. 1999) ("Plaintiffs' Medicaid claims fall squarely under the doctrine enunciated in the case of *Ex parte Young* . . .; they are seeking prospective injunctive relief, i.e., an order that in the future defendants comply with Medicaid law."). Accordingly, the Court declines to dismiss plaintiffs' federal claims on Eleventh Amendment grounds.

b. State-Law Claims

Plaintiffs' state-law claims, however, stand on a different footing. In their seventh cause of action, plaintiffs assert that defendants' policies violate defendants' "affirmative duty to aid the needy." (Compl. ¶ 115.) The bases of this duty are the New York State Constitution and the New York State Social Services Law. (*See id.*)

In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held that the Eleventh Amendment prevents federal courts from granting declaratory or injunctive relief against state officials for violations of *state* law. *See* 465 U.S. at 106 ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. . . . Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are] inapplicable in a suit against state officials on the basis of state law."); *accord Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.*, 134 F.3d 87, 93 (2d Cir. 1998) ("It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law."). Thus, the Eleventh Amendment bars plaintiffs' seventh cause of action.[2]

2. Mootness

Defendants also assert that both the named plaintiffs are currently receiving Medicaid

---

[1] Although plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988, the potential for a monetary award in the form of attorneys' fees does not implicate the Eleventh Amendment. *See, e,g.*, *Kentucky v. Graham*, 473 U.S. 159, 170–71 (1985).

[2] Plaintiffs' second and third causes of action rely on both New York State and federal law. Thus, the Court dismisses these claims only to the extent that they rely on state law.

9

benefits and argue that this bars plaintiffs' claims. The Court disagrees.

a. Applicable Law

"'Article III of the Constitution limits federal 'judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980)). At the "'uncontroverted core'" of the case or controversy requirement "'lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.'" *Id.* (quoting *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001)). "When the issues in dispute between the parties are no longer live, a case becomes moot, and the court. . . loses jurisdiction over the suit." *Id.* (internal citations and quotations omitted).

Here, the potential mootness issue arises because both plaintiff Sirikeshun and plaintiff Fishman are currently receiving Medicaid benefits.

b. Application

(1) Sirikeshun

The Court declines to dismiss plaintiff Sirikeshun's claims on mootness grounds.

Mr. Sirikeshun claims his Medicaid benefits were improperly revoked and that he was without Medicaid for a ten-month period. (Compl. ¶ 77 & n.40.) Defendants dispute this. Thus, there is a live dispute between the parties. Furthermore, if the Court grants the relief plaintiffs seek, Sirikeshun will be entitled to a new hearing at which he could seek retroactive benefits for the ten-month gap in his Medicaid coverage. Accordingly, this Court has the ability to award a measure of actual relief to Sirikeshun; a decision in his favor will not be "merely advisory." *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 138 (2d Cir. 2010) (affirming dismissal of case on mootness grounds because judgment in plaintiff's favor would not grant plaintiff any "effectual relief" and "any decision on the ultimate merits of the dispute would be merely advisory"); *accord ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (explaining that a case must be dismissed on mootness grounds if it becomes "impossible for the court to grant *any effectual relief whatever* to a prevailing party" (emphasis added) (quotation omitted)); *cf. ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 94 -95 (2d Cir. 2007) (finding case was not moot where "[t]he parties thus retained a practical stake in the dispute, and the court continued to be capable of rendering a judgment that would have a practical effect on the legal rights of the parties."). In short, although the Eleventh Amendment prevents this Court from granting Sirikeshun money damages, the Court can still grant Sirikeshun effectual relief. Therefore, his claim is not moot.

(2) Fishman

For similar reasons, the Court also declines to hold that plaintiff Fishman's claims are moot. As a threshold matter, there is a question of whether the Court can even consider defendants' argument with respect to Fishman's claims becoming moot. Defendants' counsel simply asserted at oral argument that Fishman is currently receiving benefits, but did not provide any supporting documentation. In a subsequent letter, plaintiffs' counsel asserted that Mr. Fishman reapplied for Medicaid coverage and was

approved. Plaintiff's counsel goes on to state, however, that Fishman's current coverage differs from the coverage he had before his appellant default. Before the default, he had full coverage; his new coverage imposes a $76 monthly spenddown. (*See* Letter from Peter Vollmer to Court (July 30, 2010), ECF No. 54 at 2.)

In any event, even considering defendants' mootness argument as to plaintiff Fishman, there is still a live controversy between the parties as to whether the initial termination of Fishman's aid complied with due process and the Medicaid statute's fair hearing requirement. As with Sirikeshun, the Court can grant Fishman effectual relief by entering judgment ordering defendants to provide Fishman with an opportunity for a re-scheduled hearing. As such, Fishman's claims are not moot.

B. Effect of Medicaid Statute, the Medicaid Regulations, and the State Medicaid Manual

As noted above, plaintiffs contend that defendants' actions violate two provisions of the Medicaid statute—42 U.S.C. § 1396a(a)(3) and 42 U.S.C. § 1396a(a)(1), the regulations implementing these provisions, and the State Medicaid Manual. Defendants contend that neither the statute, the regulations, nor the Manual create a private right of action. However, the Court concludes that § 1396a(a)(3) creates a private right enforceable via 42 U.S.C. § 1983. Furthermore, the implementing regulations and the Manual define the scope of this right. The Court need not decide whether § 1396a(a)(1) creates a private right because any relief under that statute would be duplicative of the relief under § 1396a(a)(3).

1. Applicable Law

Section 1983 provides a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Therefore, to prevail on a § 1983 claim, a plaintiff "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original); *accord Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 136 (2d Cir. 2010).

In *Blessing*, the Supreme Court held that a court should consider three factors in determining whether a federal statute creates a right enforceable through § 1983: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States." 520 U.S. at 340-41 (quotation omitted). If these factors are met, then the burden shifts to defendants to demonstrate that "Congress specifically foreclosed a remedy under § 1983." *See id.* at 341 (internal quotation omitted); *Gonzaga v. Doe*, 536 U.S. 273, 285 n.4 (2002).

Five years after *Blessing*, the Court decided *Gonzaga*. In *Gonzaga*, the Court clarified the showing a plaintiff must make with respect to the first factor in the *Blessing* analysis. Although *Blessing* indicates that a plaintiff

needs to show simply that he was an intended beneficiary of the underlying statute, *Gonzaga* emphasized that only "an unambiguously conferred right" can "support a cause of action brought under § 1983." 536 U.S. at 283. Thus, it is not enough that a plaintiff "falls within the general zone of interest that the statute is intended to protect[.]" *See id.* In short, only rights are enforceable through § 1983 and there must be a clear showing that the underlying statute creates a right.

Below, the Court applies these factors to the statutes at issue here—42 U.S.C. § 1396a(a)(3) and § 1396a(a)(1).

2. 42 U.S.C. § 1396a(a)(3)

Section 1396a(a)(3) provides:

"A state plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness[.]"

Applying the *Blessing/Gonzaga* framework, the Court finds that this statute creates a right enforceable through § 1983. First, by mandating "an opportunity for a fair hearing . . . to any individual," the statute confers a right to a fair hearing to anyone who is denied Medicaid assistance. Second, it would not "strain judicial competence" to enforce this right. The question of whether the state provides for a "fair hearing" essentially requires a procedural due process analysis, which federal courts frequently apply in other contexts. Third, the statutory language imposes a binding obligation on the states: namely, the states must provide a fair hearing when they deny a claim for Medicaid assistance or fail to act upon such a claim with reasonable promptness. Thus, a rebuttable presumption exists that § 1396a(a)(3) creates a private right that may be enforced via § 1983, and defendants have not put forward any evidence sufficient to rebut this presumption. In short, plaintiffs may enforce § 1396a(a)(3) through § 1983.

Numerous other courts, both before and after *Gonzaga*, have reached the same conclusion regarding § 1396a(a)(3). *See, e.g.*, *Shakhnes ex rel. Shakhnes v. Eggleston*, - - - F. Supp. 2d - - - -, Nos. 06 Civ. 04778(RJH), 09 Civ. 4103(RJH), 2010 WL 3817369, at *7 (S.D.N.Y. Sept. 30, 2010) ("Each of [the *Blessing/Gonzaga*] inquiries supports a § 1983 cause of action for 1396a(a)(3) violations: (1) the statutory text is literally phrased in terms of the 'individual' aggrieved, (2) the right protected—fair hearings—is easily administered by judicial institutions, which are intimately familiar with issues of process, and (3) the statute unambiguously imposes a binding obligation: the fair hearing 'must' be provided for." (collecting cases)); *accord Gean v. Hattaway*, 330 F.3d 758, 772 -73 (6th Cir. 2003); *McCartney ex rel. McCartney v. Cansler*, 608 F. Supp. 2d 694, 699 (E.D.N.C. 2009) ("The statutory language does more than merely establish a general policy. Its intention is to benefit individual Medicaid claimants by imposing upon the State an obligation to provide a claimant with a fair hearing prior to denial of a claim for Medicaid services. . . . Additionally, it is neither so vague nor amorphous as to be unenforceable."); *Susan J. v. Riley*, 254 F.R.D. 439, 457 (M.D. Ala. 2008); *Kerr v. Holsinger*, No. Civ.A.03-68-H, 2004 WL 882203, at *5 (E.D. Ky. Mar. 25, 2004); *see also Meachem v. Wing*, 77 F. Supp. 2d 431, 440-41 (S.D.N.Y. 1999) (pre-*Gonzaga* case). In short, § 1396a(a)(3) may be enforced via §

1983.

The parties also dispute the extent to which two federal regulations implementing § 1396a(a)(3)—42 C.F.R. §§ 431.205[3] and 431.223[4]—are relevant to plaintiffs' § 1983 claims. Although the Second Circuit has declined to decide the issue, the majority of federal courts of appeals have found that federal regulations do not, by themselves, create enforceable rights. *See D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006) (collecting cases); *see, e.g.*, *Guzman v. Shewry*, 552 F.3d 941, 952 (9th Cir. 2009) ("'[A]gency regulations cannot independently create rights enforceable through § 1983.'" (quoting *Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003)). This Court agrees with the majority view. It is clear from Supreme Court jurisprudence dealing both with private rights of action enforceable through § 1983 and with implied private rights of action that only Congress can create such rights. *See Gonzaga*, 536 U.S. at 283 (explaining that whether a statute creates private right of action enforceable through § 1983, a court "must first determine whether Congress *intended to create a federal right*" (emphasis in original)); *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (explaining that "[like substantive federal law itself, private rights of action to enforce federal law must be created by Congress" and holding that no implied private right of action could exist under regulations promulgated under Title VI of the 1964 Civil Rights Act); *id.* at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). *See generally In re: DHB Indus. Derivative Litig.*, - - - F.3d - - - -, No. 08-3860-cv, slip op. at 4584 (2d Cir. Sept. 30, 2010) ("Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute. Without a showing of congressional intent, a cause of action does not exist.'" (quoting *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007)). Thus, if the statute itself does not create a right, federal agencies have no authority to independently create such a right through their regulations.

However, the fact that the cited regulations cannot create a stand-alone enforceable right does not defeat plaintiffs' claims. None of plaintiffs' claims rely solely on the

---

[3] This regulation provides:

(a) The Medicaid agency must be responsible for maintaining a hearing system that meets the requirements of this subpart.

(b) The State's hearing system must provide for--

(1) A hearing before the agency; or

(2) An evidentiary hearing at the local level, with a right of appeal to a State agency hearing.

(c) The agency may offer local hearings in some political subdivisions and not in others.

(d) The hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in this subpart.

[4] This regulation provides:

The agency may deny or dismiss a request for a hearing if--

(a) The applicant or recipient withdraws the request in writing; or

(b) The applicant or recipient fails to appear at a scheduled hearing without good cause.

regulations; rather, as noted above, plaintiffs rely on the statute. Moreover, even though they do not independently create enforceable rights, federal regulations can assist "in determining the scope of the right conferred by Congress" in the relevant statute. *See Save Our Valley*, 335 F.3d at 943-44; *accord Shakhnes*, 2010 WL 3817369, at *7-8 (explaining that "regulations can define the scope of a § 1983 cause of action for enforcement of the underlying statutory right so long as they merely define or flesh out the content of that right" and analyzing implementing regulations to determine content of right created by § 1396a(a)(3)); *see also Susan J.*, 254 F.R.D. at 457 (explaining, in context of § 1396a(a)(3), that "[t]he implementing regulations specify the content of the notice and the requirements for a fair hearing"). Thus, the Court views the regulations as relevant in determining the scope of the "fair hearing" requirement set out in § 1396a(a)(3).

The Court reaches a similar conclusion with respect to the State Medicaid Manual (the "Manual"). This Manual is "an informal rule issued by the Department of Health and Human Services' . . . Centers for Medicare and Medicaid Services . . . ." *Wong v. Doar*, 571 F.3d 247, 250 (2d Cir. 2009). As relevant to this case, it provides that a Medicaid fair hearing request may be considered abandoned when:

> neither the claimant nor his representative appears at scheduled hearing, and if within a reasonable time (of not less than 10 days) after the mailing of an inquiry as to whether he wishes any further action on his request for a hearing no reply is received

Manual § 2902.3(B). Again, the parties sharply disagree about the significance of this provision. Plaintiffs contend that it requires defendants to provide written notice to Medicaid appellants of missed hearings and to give the appellants at least ten days to respond to the notice before an appeal is dismissed as abandoned. For their part, defendants accuse plaintiffs of trying to "bootstrap" the Manual "into a constitutional violation." (*See* Defs.' Reply Mem. of Law at 3.)

Although the Manual does not create a private right of action, the Court should consider it in determining the scope of the statutory "fair hearing" requirement. Because the Manual is HHS's "'informal interpretation'" of its own regulations, it "warrants 'some significant measure of deference.'" *Morenz v. Wilson-Coker*, 415 F.3d 230, 235 (2d Cir. 2005) (quoting *Rabin v. Wilson-Coker*, 362 F.3d 190, 197 (2d Cir. 2004)). Indeed, "[a]n agency's interpretation of its own statute and regulation 'must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Fowlkes v. Adamec*, 432 F.3d 90, 97 (2d Cir. 2005) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

Here, the Manual's post-default notice requirement is inconsistent with neither the statute's "fair hearing" requirement nor the implementing regulations. Furthermore, defendants do not cite (and the Court's independent research has not revealed) any case law questioning § 2902.3. On the other hand, nothing currently in the record indicates how or why the agency determined that post-default notice was necessary to effectuate the statute's purposes. *Cf. Rabin*, 362 F.3d at 197 (explaining that Manual is entitled to "some significant measure of deference" but

that deference was limited under circumstances of *Rabin* because "there [was] no indication in the record of the process through which [the agency] arrived at its interpretation"; the agency's interpretation failed to take into account a contrary interpretation by a federal court of appeals; and the agency had labeled its interpretation "tentative"). At this juncture, the Court views the Manual as probative, but not dispositive, as to the scope of § 1396a(a)(3)'s fair hearing requirement.[5]

In sum, the Court concludes that (1) § 1396a(a)(3) creates a right to a fair hearing before Medicaid recipients have their aid revoked, and (2) 42 C.F.R. §§ 431.205 and 431.223 and § 2902.3 of the State Medicaid Manual define the content of that right in the situation where a Medicaid appellant fails to appear at a hearing.

### 3. Section 1396a(a)(1)

Plaintiffs also assert that 42 U.S.C. § 1396a(a)(1) provides a private right enforceable under § 1983.

Section 1396a(a)(1) provides:

> "A State plan for medical assistance must . . . provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them[.]"

Before *Gonzaga* was decided, the Second Circuit assumed without deciding (and with limited analysis) that § 1396a(a)(1) created a private right enforceable through § 1983. *See Concourse Rehab. & Nursing Ctr., Inc. v. Wing*, 150 F.3d 185, 188 (2d Cir. 1998) ("Our difficulty with Concourse's argument is that it focuses more on whether Section 1396a(a)(1) creates federal rights enforceable by private parties—we may assume without deciding that it does—than on whether the rights it creates afford the relief Concourse seeks."); *see also Graus v. Kaladjian*, 2 F. Supp. 2d 540, 544 (S.D.N.Y. 1998) (assuming *arguendo* private enforceability of § 1396a(a)(1)).

*Gonzaga*, however, stressed that the presence of "individually focused," "rights-creating language" was a significant factor in determining whether a statute created a private right. 536 U.S. at 287. The statutes at issue in *Gonzaga*, provisions of the Family Educational Rights and Privacy Act, contained no such language. Instead, the statute had an "aggregate focus";[6] providing only that "'[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'" *Id.* (quoting 20 U.S.C. § 1232g(b)(1)). Thus, the statute was "not concerned with 'whether the needs of any particular person have been satisfied' . . . and [could not] 'give rise to individual rights.'" *Id.* (quoting *Blessing*, 520 U.S. at 343-44).

Similarly, §1396a(a)(1) focuses on what a state plan must contain and how the plan must be administered. Although Medicaid

---

[5] In any event, the Court does not view § 2902.3 as a determinative factor on the instant motion. Put another way, there is no question in the Court's view that Medicaid appellants have a right to a "fair hearing," meaning a hearing procedure that affords them due process. *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. 431.205(d). As discussed more fully below, even absent § 2902.3, plaintiffs' allegations raise a plausible claim that they have been denied that right.

[6] *Id.* at 288.

15

recipients may be the intended beneficiaries of this provision, that is not enough after *Gonzaga*. Now, the statute must create a right. Section 1396a(a)(1), however, contains no explicit rights-creating language. *See Masterman v. Goodno*, No. Civ.03-2939(JRT/FLN), 2004 WL 51271, at *10-11 (D. Minn. Jan. 8, 2004) (finding that § 1396a(a)(1) did not create a private right). In short, it is highly questionable whether, after *Gonzaga*, § 1396a(a)(1) can be enforced via § 1983.

In any event, the Court need not decide this issue. Plaintiffs' § 1396a(a)(1) claim is based on the same factual allegations and seeks essentially the same relief as plaintiffs' § 1396a(a)(3) claim. Thus the Court dismisses the § 1396a(a)(1) claim as duplicative of the § 1396a(a)(3) claim.

### 3. Additional Arguments

#### a. Automatic Default and Dismissal Policy

Defendants argue that plaintiffs fail to state a claim for which relief can be granted. The Court disagrees.

As to the "automatic default and dismissal policy," the complaint alleges that plaintiffs have been adversely affected by the policy. Both of the named plaintiffs allege that they missed their fair hearings, they were classified as "appellant default[s]," and thus their Medicaid benefits were terminated for a time.

Furthermore, it is plausible that plaintiffs have been deprived of their right to a fair hearing under § 1396a(a)(3). First, the State Medicaid Manual requires a post-default notice procedure. Second, even absent the Manual, § 1396a(a)(3) creates a right to a fair hearing and the implementing regulations require the state agency determine that the appellant missed the scheduled hearing "without good cause" before dismissing for failure to appear. 42 C.F.R. § 431.223. Viewed in a light most favorable to plaintiffs, the current policy appears to place the onus entirely on Medicaid appellants (many of whom, like both the named plaintiffs, suffered from mental impairments) to determine that they missed a scheduled hearing and to navigate the procedures in 18 N.Y.C.R.R. § 358-5.5. Notably, these procedures require the appellant to either (1) establish good cause for missing the hearing within 15 days, which could be difficult if the appellant was mistaken about the date of the hearing in the first place or (2) establish, within 45 days, that they never received notice of the hearing, which requires the appellant to prove a negative. Third, New York State believed, at one time, that a post-default notice procedure was appropriate but then eliminated this procedure for unknown reasons. In short, the allegations in the complaint are sufficient to survive a motion to dismiss on plaintiffs' statutory claim.

Similarly, plaintiffs also state a plausible claim that the automatic default and dismissal policy deprives them of their Fourteenth Amendment due process rights.

Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court must balance the following factors in evaluating the adequacy of a challenged procedure:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 167-68 (2d Cir. 2001) (quoting *Mathews*, 424 U.S. at 335) (quotations omitted). Here, first, Medicaid benefits constitute a protected property interest. *Wooten v. N.Y. City Human Res. Admin.*, 421 F. Supp. 2d 737, 741 (S.D.N.Y. 2006) ("Medical benefits like the ones at issue do constitute a protected property interest for the purposes of the Fourteenth Amendment."); *see also Goldberg v. Kelly*, 397 U.S. 254, 261 (1970) (holding that due process entitles a welfare recipient to "an adequate hearing" before benefits are terminated). Second, as set forth more fully in the discussion of plaintiffs' § 1396a(a)(3) claim, there is a plausible basis to believe the risk of erroneous deprivation is high given the circumstances of many members of the putative class. Finally, at the motion to dismiss stage, it appears the government would bear a relatively minor burden in providing post-default notice—essentially, the costs of printing and postage.

Defendants also argue that New York C.P.L.R. Article 78 provides an adequate remedy for plaintiffs and, thus, bars plaintiffs' claims. The Court disagrees. It is true that, as a general rule, there can be no procedural due process violation when the state "'provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.'" *Pataki*, 261 F.3d at 168 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (finding Article 78 provided adequate remedy on unreasonable delay claim against the New York State Division of Human Rights). However, the available remedies must be constitutionally adequate. *See, e.g.*, *Krimstock v. Kelly*, 306 F.3d 40, 60 (2d Cir. 2002) ("[W]e conclude that the suggested remedy of an Article 78 proceeding does not provide a prompt and effective means for claimants to challenge the legitimacy of the City's [actions]. . . . Furthermore, inasmuch as plaintiffs claim that the federal Constitution requires the state court to offer a remedy that is currently not available under state or local law, this constitutional challenge need not proceed through the state court before it reaches the federal courts."); *Shakhnes*, 2010 WL 3817369, at *6 ("[T]he availability of state remedies can defeat a claim if (and only if) those remedies are constitutionally adequate."). Additionally, where a plaintiff bring claims based on the inadequacy of current state procedures, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996); *accord Carter v. Inc. Vill. of Ocean Beach*, 693 F. Supp. 2d 203, 214 (E.D.N.Y. 2010).

Here, at the motion to dismiss stage, there are questions as to the adequacy of Article 78 procedures under the particular circumstances of this case. Presumably, Medicaid appellants would bring Article 78 proceedings after they learned they had defaulted on their appeals and their benefits had been terminated. Thus, Article 78 would provide a *post*-deprivation remedy. However, plaintiffs have a constitutional (under *Goldberg*) and a statutory (under § 1396a(a)(3)) right to a meaningful *pre*-deprivation hearing. Accordingly, the Court cannot conclude at this stage of the litigation that an Article 78 remedy would be constitutionally adequate. *See, e.g.*, *Meachem v. Wing*, 77 F. Supp. 2d 431, 436-37 (S.D.N.Y. 1999) ("Here, where

17

plaintiffs do assert that the established state process of conducting fair hearings denies them due process, and allege that they are entitled to certain pre-deprivation remedies under federal constitutional and statutory law, the availability of adequate post-deprivation relief is not relevant, and plaintiffs' claims may proceed."). Moreover, requiring Medicaid appellants, many of whom are mentally disabled and proceeding without counsel (such as plaintiff Sirikeshun) to navigate an Article 78 proceeding by themselves creates an arguably higher risk of erroneous deprivation than post-default notice would. As such, at the motion to dismiss stage, the Court declines to dismiss this case based on the purported availability of Article 78 remedies.

b. Telephone Line

Although the focus of the parties' argument is the lack of post-default notice, plaintiffs also challenge the adequacy of the telephone line used by Medicaid appellants to schedule adjournments of hearings ("the fair hearing telephone line"). The complaint and supporting papers set forth abundant data showing that callers to the line are often met with busy signals or inexorable waiting times. Defendants' primary argument on this aspect of plaintiffs' claim is that neither named defendant has ever used the telephone line. (*See* Defs.' Reply Mem. of Law at 6-7.)

"As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). However, this requirement will be excused where the plaintiff can make a substantial showing that submission to the policy would be "futile." *Id.*; *accord Bach v. Pataki*, 408 F.3d 75, 82 (2d Cir. 2005) (holding that failure to apply for firearms license did not bar plaintiff's challenge to New York handgun law because any application would have been unsuccessful given that plaintiff was not a New York resident).

Here, plaintiffs have alleged in substantial detail that calling the fair hearing telephone line is futile. Notably, plaintiffs assert, based on data obtained from the OTDA, that in a nine-month period between November 2008 and August 2009, only 4.73% of calls to the line were successful. (Compl. ¶ 45 & n.18.) Additionally, Sandra Gumerove, the attorney who represented plaintiff Fishman in his Medicaid proceedings, states in a declaration incorporated by reference into the complaint that (1) she has received a busy signal every time she called the line over a ten-year period and therefore often relies on her adversaries from the Nassau County Department of Social Services to obtain adjournments via alternative means, and (2) attempted (and believed she did) obtain an adjournment through the Nassau DSS in plaintiff Fishman's case. (Gumerove Decl. ¶¶ 33-34.)

Thus, if the allegations in the complaint are taken as true and all reasonable inferences are drawn in plaintiffs' favor, it can be reasonably inferred that Gumerove believed that calling the line to request an adjournment for Fishman would simply have resulted in her hearing a busy signal or being otherwise unable to connect. *Cf. Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999) ("We will not require . . . a futile gesture as a prerequisite for adjudication in federal court." (quoting *Williams v. Lambert*, 46 F.3d 1275, 1280 (2d Cir. 1995)). Furthermore, it can be reasonably inferred that Fishman suffered prejudice

because of this—according to the complaint, the Nassau DSS official who Gumerove dealt with did not, in fact, adjourn Fishman's hearing and this resulted in Fishman's default. (Compl. ¶¶ 56-58.) Under these circumstances, the fact that Fishman or his representative never called the line does not deprive plaintiffs' of standing to challenge the line's adequacy.

## IV. CONCLUSION

For the reasons set forth above, the Court grants the motion to dismiss in part and denies it in part. Specifically, the motion to dismiss is granted with respect to plaintiffs' claims under (1) New York state law and (2) 42 U.S.C. § 1396a(a)(1). The motion to dismiss is denied in all other respects.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 15 , 2010
Central Islip, New York

\* \* \*

Counsel for plaintiffs is Peter Vollmer, 19 Hawthorne Road, Sea Cliff, New York 11579. Counsel for defendants is Andrew Cuomo, Attorney General of the State of New York, by Susan M. Connolly, 300 Motor Parkway, Suite 205, Happauge, New York 11788.