UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 09-cv-5248 (JFB) (ARL)

NEIL FISHMAN, BY HIS LEGAL GUARDIAN, SELMA FISHMAN, AND SURUJ SIRIKESHUN,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

RICHARD F. DAINES, M.D., AS COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF HEALTH, AND JOHN PAOLUCCI, AS DEPUTY COMMISSIONER OF THE
OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE OF THE NEW YORK STATE
DEPARTMENT OF FAMILY ASSISTANCE,

Defendants.

**MEMORANDUM AND ORDER**
March 29, 2017

JOSEPH F. BIANCO, District Judge:

Plaintiffs Neil Fishman, through his legal guardian ("Fishman"), and Suruj Sirikeshun ("Sirikeshun") (collectively, "plaintiffs") bring this class action pursuant to 42 U.S.C. §§ 1983 and 1396a(a)(3) against the Commissioner of the New York State Department of Health ("DOH")[1] and the Commissioner of the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance ("OTDA")[2] (collectively, "defendants").

By Memorandum and Order dated September 16, 2014, the Court denied plaintiffs' motion for a preliminary injunction requiring defendants to mail a "default notice" to members of the plaintiff class before their Medicaid appeals are deemed abandoned because they missed a scheduled hearing. The Court found that plaintiffs failed to make a clear showing that they were likely to succeed on the merits of their due process or statutory claims. Plaintiffs appealed this decision, and by Summary Order dated October 15, 2015, the Second Circuit reversed this Court's denial of the preliminary injunction and remanded the case for further proceedings. The Court subsequently granted plaintiffs' motion for a preliminary injunction by Memorandum and

---

[1] The DOH Commissioner was formerly Richard Daines and is now Howard Zucker.

[2] The OTDA Commissioner was formerly John Paolucci and is now Samuel Roberts.

Order dated March 4, 2016, as amended on March 10, 2016.

Thereafter, on April 20, 2016, plaintiffs moved for partial summary judgment, seeking to make the preliminary injunction permanent. Defendants oppose the motion on the sole ground that plaintiffs lack standing to bring this action. For the reasons discussed below, the Court finds defendants' position to be without merit, grants plaintiffs' motion for partial summary judgment in its entirety, and hereby orders that defendants are permanently enjoined from dismissing administrative appeals of defaulting Medicaid appellants ho are not given at least ten (10) days to respond to a written notice from defendants inquiring as to whether they would like their hearings rescheduled.

I. BACKGROUND

A. Facts and Legal Framework

Because defendants' opposition is restricted to standing, the Court limits its analysis to those facts set forth in the parties' Rule 56.1 statements, as well as the parties' affidavits and exhibits, pertaining to that issue.[3] Upon consideration of the motion for partial summary judgment, the Court will construe the facts in the light most favorable to defendants as the nonmoving party, and it will resolve all factual ambiguities in their favor. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001).

---

[3] Defendants' 56.1 Statement ("Defs.' 56.1," ECF No. 159-1) responds to only of one of the 82 facts in plaintiffs' 56.1 Statement ("Pls.' 56.1," ECF No. 149-1). Moreover, defendants have not submitted any evidence to contradict the remaining facts. Consequently, the Court deems defendants to have admitted the remaining facts pursuant to Local Rule 56.1(c). *See, e.g.*, *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003).

The background facts of this case, including an overview of the Medicaid system and appeals process, are set forth in this Court's opinions (1) denying, in large part, defendants' motion to dismiss, *see Fishman v. Daines*, 743 F. Supp. 2d 127 (E.D.N.Y. 2010) ("*Fishman I*"); (2) denying the preliminary injunction, *see Fishman ex rel. Fishman v. Daines*, No. 09-CV-5248 JFB ARL, 2014 WL 4638962, (E.D.N.Y. Sept. 16, 2014) ("*Fishman II*"), *vacated and remanded sub nom. Fishman v. Paolucci*, 628 F. App'x 797 (2d Cir. 2015); and (3) granting the preliminary injunction following remand, *see Fishman v. Daines*, 164 F. Supp. 3d 409 (E.D.N.Y. 2016) ("*Fishman III*"). In addition, the Second Circuit summarized the contours of the Medicaid program in its order remanding this action. *See Fishman*, 628 F. App'x at 797. Because defendants do not contest either this Court's or the Second Circuit's analysis of the relevant legal scheme (*see* Defs.' Opp'n Br., ECF No. 159, at 12 n.6), the Court will briefly outline the law and regulations at issue.

In short, this case involves the procedures by which defendants determine that a Medicaid appeal is abandoned. After defendants conclude that a claimant is no longer entitled to Medicaid benefits, they inform the claimant by letter and advise him that he may request a fair hearing. *See Fishman II*, 2014 WL 4638962, at *1-2. If the request is timely made, the claimant may continue to receive "aid-continuing" Medicaid coverage pending the outcome of the hearing, and defendants send two additional letters: first, an acknowledgement that a fair hearing has been requested; and second, a notice that the fair hearing has been scheduled, which includes instructions for requesting adjournments. *Id*.

If a claimant does not attend his fair hearing, whether because he did not receive a notice or for any other reason, he is considered to have defaulted his hearing, and risks having his appeal deemed abandoned. *See* 18 N.Y.C.R.R. § 358-5.5(a). It is possible to restore a defaulted hearing to the calendar, but the timing of the request to do so affects the continuing provision of Medicaid coverage. *See id.* § 358-5.5(c). Plaintiffs contend that many class members lost aid-continuing coverage, at least temporarily, because they did not realize that they missed their fair hearing. *Fishman II*, 2014 WL 4638962, at *2. The default notice requested by plaintiffs, and temporarily put in place by the Court when it granted the preliminary injunction, would inquire as to whether the defaulting Medicaid appellant wanted his or her hearing rescheduled and would give the appellant at least ten (10) days to respond to the notice before dismissal of the administrative appeal. *Id.*; *see also Fishman III*, 164 F. Supp. 3d at 418.

B. Procedural Background

After the Court issued its opinion on the motion to dismiss in 2010, *see Fishman I*, 743 F. Supp. 2d at 127, the parties reached a comprehensive stipulation, which the Court ordered effective on April 6, 2011 (ECF No. 61). Among other things, the stipulation certified this case as a class action, on behalf of "[a]ll past, present, and future applicants and recipients of Medical Assistance . . . in New York State who: (a) requested or will request an administrative fair hearing . . . (b) failed or will fail to appear in-person . . . and (c) suffered or will suffer dismissal of their administrative appeal without defendants' prior written inquiry."[4] (*Id.*

¶ 1.) The stipulation also required defendants to begin issuing letters to prospective class members who defaulted their fair hearings. (*Id.* ¶ 3(b).) The letters asked class members if their hearing request was abandoned, and advised them that if they intended to reschedule their hearing, they must provide good cause for having defaulted. (*Id.*) The letter also required the class members to respond within ten (10) days of the letter's mailing date, or else their hearing request would be deemed abandoned. (*Id.*) The letters were issued for approximately two years, between the date the Court so-ordered the stipulation on April 6, 2011, and the date it was vacated on September 16, 2013.

The stipulation also included a provision exempting prospective class members from the requirements of 18 N.Y.C.R.R. § 358-5.5. (*Id.* ¶ 3(f).) At that time, Section 358-5.5 required defaulting Medicaid appellants to request that their hearing be rescheduled within 15 days of default, and to show good cause, or to establish within 45 days that they had not received the initial notice of the hearing. *Fishman II*, 2014 WL 4638962, at *3. Under the terms of the stipulation, the class members were not bound by the 15- and 45-day timelines, but instead by the single timeline of ten days from the mailing date of the default notice. Section 358-5.5 did not, and still does not, address the issuance of a written default notice.

The 15- and 45-day requirements were eliminated when Section 358-5.5 was amended, effective October 23, 2012. Medicaid appellants now have one year to request that their hearings be rescheduled, but are also subject to a new timeline. They must request that their hearing be

---

[4] Although this stipulation was later vacated (ECF No. 101), defendants subsequently stipulated to the certification of the same class, both by letter dated September 18, 2013 (ECF No. 102), and by a jointly-signed stipulation so-ordered by the Court on March 10, 2014 (ECF No. 123).

rescheduled within 60 days of the date of default, or they will be unable to recover retroactive benefits for any period of lost coverage after they defaulted. *See* 18 N.Y.C.R.R. § 358-5.5(c)(1). If their request to reschedule the hearing is made 60 days or more after the default, they will only receive medical coverage prospectively, from the date of their request. *Id*. § 358-5.5(c)(2).

After Section 358-5.5 was amended, plaintiffs moved to alter the stipulation so that the plaintiff class could benefit from the longer one-year timeline, and from the provision addressing retroactive and prospective coverage, which was not addressed by the terms of the stipulation. (ECF No. 91.) Defendants opposed the motion. Ultimately, the Court vacated the stipulation, pursuant to Fed. R. Civ. P. 60(b)(5), concluding that it was not equitable to bind defendants to both the stipulation and the amended regulation at the same time, because defendants had negotiated the stipulation with the former regulation in mind. (*See* ECF No. 101.) If defendants were required to extend the new regulation to the prospective class members, the Court held that they should receive the opportunity to litigate the necessity of a written default notice in light of the new regulation. (*Id*.)

On September 16, 2014, the Court denied plaintiffs' motion for a preliminary injunction, which would have prohibited defendants from dismissing the administrative appeals of defaulting Medicaid appellants who were not given at least ten days to respond to a post-hearing notice. *See Fishman II,* 2014 WL 4638962, at *11. The Court concluded that plaintiffs failed to make a clear showing that they were likely to succeed on their due process or statutory claims. *Id*. Plaintiffs appealed that decision, and by Summary Order dated October 15, 2015, the Second Circuit reversed this Court's denial of the preliminary injunction and remanded the case for further proceedings consistent with its Summary Order. *See Fishman*, 628 F. App'x at 797. Specifically, the Second Circuit found that this Court "did not separately conduct an analysis of 42 U.S.C. § 1396a(a)(3)" and remanded the motion "to provide [this Court] with the opportunity to do so in the first instance." *Id.* at 802. The Second Circuit directed that the Court "should ask whether plaintiffs are likely to succeed on their claim that New York violates their § 1396a(a)(3) fair hearing right as defined further by any relevant federal regulations, including 42 C.F.R. § 431.223." *Id*.

Following remand, this Court granted the preliminary injunction on March 4, 2016, as amended on March 10, 2016, after finding that plaintiffs had

> made a clear showing that they are likely to succeed on the merits of their statutory claim. As previously held by this Court and confirmed by the Second Circuit, 42 U.S.C. § 1396a(a)(3) creates a right to a fair hearing before Medicaid benefits are revoked, which is enforceable through [42 U.S.C.] § 1983. 42 C.F.R. § 431.223's requirement that a Medicaid fair hearing request not be dismissed without good cause may be reasonably understood to be part of the right to an opportunity for a Medicaid fair hearing.

*Fishman III*, 164 F. Supp. 3d at 411. In addition, the Court held that "the State Medicaid Manual—which provides in a directive that participating states must inquire by written notice as to whether Medicaid appellants want their defaulted

hearings rescheduled and may only dismiss them if no reply is received—is entitled to *Skidmore* deference." *Id*. In sum, the Court found that plaintiffs were likely to succeed on the merits of their claims because 42 U.S.C. 1396a(a)(3), "as informed by the relevant federal regulation and agency interpretation of the regulation (through the State Medicaid Manual)," requires "that the State, before dismissing an appeal as abandoned when the Medicaid appellant failed to appear at the hearing, must ascertain through a post-default notice whether the appellant wishes any further action on his request for a hearing." *Id*. Accordingly, the Court preliminarily enjoined defendants "from dismissing administrative appeals of defaulting Medicaid appellants who are not given at least 10 days to respond to a written notice from defendants inquiring whether they would like their hearings rescheduled . . . ." *Id*.

Thereafter, on April 20, 2016, plaintiffs moved for partial summary judgment, seeking to make the preliminary injunction permanent. (ECF No. 149.) The parties then requested multiple extensions of the briefing schedule due to settlement discussions, and defendants eventually submitted their opposition on March 3, 2017. (ECF No. 159.) Plaintiff replied on March 24, 2017 (ECF No. 160), and the Court held oral argument on March 27, 2017 (ECF No. 161). The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

The standard for summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Rule 56(c)(1) provides that a

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some

metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Plaintiffs argue that a permanent injunction is warranted because "[i]t is uncontested that defendants do not provide post-default notice. Since 42 U.S.C. § 1396a(a)(3) creates an enforceable federal right to such notice and defendants do not provide it, plaintiffs submit that they are entitled to judgment as a matter of law on their federal statutory claim under 42 U.S.C. § 1396a(a)(3)." (Pls.' Br., ECF No. 149-3, at 2.)

In response, defendants do not contest this premise; instead, defendants state that they "recognize those decisions issued by the Second Circuit and [this] Court concerning the private right of action and deference to the Medicaid Manual issues, and therefore do not raise them in this context," although they "respectfully reserve their rights with regard thereto in the future, inasmuch as the counters of any right to post-default notice was not clearly established at least until the Second Circuit's decision last year." (Defs.' Opp'n Br. at 12 n.6.) Defendants' opposition is limited to their contention that "plaintiffs have failed to sustain the basic burden of proving they have standing in this matter." (*Id*. at 12.) Specifically, they argue that (1) neither Fishman nor Sirikeshun have "submitted any proof that they suffered an injury-in-fact as a result of not receiving a third notice from OTDA, post-default" (*id*. at 16); and (2) plaintiffs have "failed to satisfy the requirement that any purported injury must have been as a result of the defendants' acts" (*id*. at 17).

For the reasons that follow, the Court disagrees with defendants and grants plaintiffs' motion for partial summary judgment in its entirety.

A. Applicable Law

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution[, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir.

6

2009) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that there are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Id.* (brackets and citation omitted); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citation omitted)). Courts must evaluate a plaintiff's standing "as of the outset of the litigation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

Article III's injury-in-fact component requires that a plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Further, the alleged injury must "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Id*. (citations omitted).

"Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (recognizing that injury required by Article III may be based on "statutes creating legal rights"), and *Lujan*, 504 U.S. at 578 (recognizing Congress's authority to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law")). However, even where Congress has codified a statutory right, a plaintiff must still allege that she has suffered a concrete and particularized injury connected to that interest. *Id*.; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016). In other words, the creation of a statutory interest does not vitiate Article III's standing requirements.

Nevertheless, in "cases where a plaintiff sues to enforce a substantive legal right conferred by statute, she has standing to pursue that claim . . . because the infringement of that right constitutes, in and of itself, a concrete injury." *Bautz v. ARS Nat'l Servs., Inc.*, --- F. Supp. 3d ---, 2016 WL 7422301, at *8 (E.D.N.Y. Dec. 23, 2016); *see also Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights. . . . A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (recognizing standing for a violation of the Fair Housing Act), and *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 137-38 (1939) (recognizing that standing can exist where "the right invaded is a legal right,— one of property, one arising out of contract, one protected against tortious invasion, or

7

one founded on a statute which confers a privilege")))."

"The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury," and such a relationship can either be direct or indirect. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). Finally, the Second Circuit has said that a "plaintiff's burden to demonstrate standing increases over the course of litigation." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Lujan*, 504 U.S. at 561). "When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n* (*Lujan I*), 497 U.S. 871, 907 n.8 (1990)). "Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot 'rest on such mere allegations, [as would be appropriate at the pleading stage] but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'" *Id.* (alteration in original) (quoting *Lujan,* 504 U.S. at 561).

B. Analysis

After eight years of litigation, including an interlocutory appeal and a class certification to which both parties consented (twice), defendants now argue that plaintiffs never had standing to pursue this action in the first place. With respect to the injury-in-fact component, they assert that neither Fishman nor Sirikeshun suffered demonstrable economic injuries because they submitted no proof that they were in fact billed for medical expenses following abandonment of their Medicaid appeals.

(Defs.' Opp'n Br. at 16-17.) The Court disagrees.

As noted, the evidentiary standards for establishing standing on a motion for a preliminary injunction and at the summary judgment stage are identical. *See Cacchillo*, 638 F.3d at 404. Although this Court did not specifically address standing in its opinions concerning plaintiffs' request for a preliminary injunction because defendants did not raise that issue, it did hold—both in its decision denying a preliminary injunction and its decision granting a preliminary injunction following remand—that plaintiffs had demonstrated irreparable injury because "[c]ourts have repeatedly held that the wrongful denial of Medicaid benefits, in situations analogous to this case, is the type of non-monetary, imminent harm that is properly characterized as irreparable." *Fishman II*, 2014 WL 4638962, at *6 (citing, *inter alia*, *Strouchler v. Shah*, 891 F. Supp. 2d 504, 520 (S.D.N.Y. 2012) (noting, in Medicaid case, "Second Circuit and out-of-circuit appellate law holding that the mere threat of a loss of medical care, even if never realized, constitutes irreparable harm"), and *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")); *see also Fishman III*, 164 F. Supp. 3d at 413-14. Moreover, the Second Circuit affirmed that finding on appeal, holding that this Court "did not abuse its discretion in finding irreparable harm" because "if the state wrongfully terminates Medicaid benefits because a beneficiary fails to appear, 'his situation becomes immediately desperate.'" *Fishman*, 628 F. App'x at 800-01 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)) (citing *Blum v. Caldwell*, 446 U.S. 1311, 1314 (1980) (order denying stay of mandate) ("[T]he very

8

survival of these individuals and those class members . . . is threatened by a denial of medical assistance benefits. . . .")). Thus, a "lack of medical services is exactly the sort of irreparable harm that preliminary injunctions are designed to address." *Id*. at 801.

This determination establishes that plaintiffs had standing at the outset of this litigation to challenge the denial of Medicaid benefits and the coincident violation of their Due Process rights because deeming a Medicaid appeal abandoned without providing prior notice of default would irreparably injure the "survival of these [plaintiffs] and those class members" that they represent. *Blum*, 446 U.S. at 1314. In other words, this Court and the Second Circuit found that plaintiffs faced an "actual or imminent" injury that was "not conjectural or hypothetical," *Baur*, 352 F.3d at 632, based on the violation of a "substantive legal right conferred by statute," *Bautz*, 2016 WL 7422301, at *8, as well as plaintiffs' constitutional rights. The invasion of such interests is sufficient to establish concrete injury for standing purposes. *See Spokeo*, 136 S. Ct. at 1553; *Strubel*, 842 F.3d at 188; *Baur*, 352 F.3d at 635 (holding that the plaintiff had standing to sue under a statute because "there [was] a tight connection between the type of injury which Baur alleges and the fundamental goals of the statutes which he sues under— reinforcing Baur's claim of cognizable injury" (citing, *inter alia*, *Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp.*, 204 F.3d 149, 156 (4th Cir. 2000) (en banc) (affirming plaintiff's standing to sue where the plaintiff "alleged precisely [those] types of injuries that Congress intended to prevent by enacting the Clean Water Act"))).

Further, to the extent that defendants argue that this injury was not sufficiently particularized, that position is not borne out by the law or the facts. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In other words, a plaintiff must "sustain a grievance distinct from the body politic, not a grievance unique from that of any identifiable group of persons." *Strubel*, 842 F.3d at 191 n.10 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-40 (1972)). First, plaintiffs sued to enforce their own right to a pre-abandonment notice of default under the apposite statutes and regulations; they did not pursue their claims solely on behalf of the general public.

Second, it "has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing," *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) (finding injury-in-fact based on alleged equal protection violations), and that "[i]mpairments to constitutional rights are generally deemed adequate to support a finding of 'injury' for purposes of standing," *Doe v. Sch. Bd. of Ouachita Parish*, 274 F.3d 289, 292 (5th Cir. 2001), *accord Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 931 (9th Cir. 2008). Thus, plaintiffs need not, as a matter of law, provide proof of individual economic harm to have standing to vindicate their constitutional rights. Regardless, there is no record support for defendants' contention that plaintiffs did not suffer financial injury as a result of the challenged notice procedures. In support of their 2010 motion for class certification, plaintiffs submitted a statement showing that Fishman had accrued $140,153.08 in debt from 2005 through 2009 for Medicaid-related services due to termination of his coverage following abandonment of his Medicaid appeal. (ECF

No. 42-3 at A342; *see also* Reply Decl. of Peter Volmer in Supp. of Mot. for Partial Summ. J. ("Volmer Reply Decl."), ECF No. 160-1, Ex. 1.) More to the point, Fishman's Medicaid coverage was terminated in 2005 and not reinstated after his Medicaid appeal was deemed abandoned. *See Fishman I*, 743 F. Supp. 2d at 135. Likewise, as the Court noted in its decision on defendants' motion to dismiss, Sirikeshun "is liable for his own medical expenses between May 11, 2007—the date his benefits were terminated—and March 31, 2008—the day before his coverage was reinstated," *id.*, and plaintiffs provided proof of those expenses with their reply brief in support of the instant motion (*see* Volmer Reply Decl., Ex. 3). Thus, the record shows that both plaintiffs had outstanding financial liabilities based on the abandonment of their Medicaid appeals when they filed suit on December 1, 2009, and as the Second Circuit affirmed on the interlocutory appeal, such injury establishes imminent harm, *see Fishman*, 628 F. App'x at 800, which, in this case, affected plaintiffs "in a personal and individual way," *Spokeo*, 136 S. Ct. at 1548.[5]

Finally, defendants' claim that plaintiffs have failed to establish causation because defendants have failed to establish mootness for two reasons.

First, the "voluntary cessation doctrine" is an exception to mootness, and "[u]nder this principle, 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Id.* (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). To overcome this exception, defendants must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* They cannot do so in this case because 18 N.Y.C.R.R. § 358-5.5 still does not require defendants to provide Medicaid applicants with notice of default prior to deeming their Medicaid appeals abandoned, and as a result, defendants have not carried their "formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 603-04 (quoting *Laidlaw*, 528 U.S. at 190). In other words, should the Court dismiss this action as moot, there is nothing that prevents defendants from again violating plaintiffs' and class members' enforceable rights under 42 U.S.C. §§ 1983 and 1396a(a)(3).

Second, the Court has already certified this case as a class action, and accordingly, the class members retain a live legal interest in the outcome of this litigation even if there is no longer a cognizable case or controversy between defendants and Fishman and Sirikeshun. *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (holding that case was not moot because "appellant brought this suit as a class action and sought to litigate the constitutionality of [a state statute] in a representative capacity," and therefore, "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant"); *Milanes v. Napolitano*, 354 F. App'x 573, 575 (2d Cir. 2009) ("When a class action has been certified, mootness of the dispute between the named plaintiff and the defendant does not render other class members' claims nonjusticiable."). Thus, even assuming that Fishman and Sirikeshun's individual claims are moot, that does not preclude this Court from granting their motion for partial summary judgment and making the preliminary injunction permanent on behalf of the remaining class members.

---

[5] As noted, standing is measured at the "outset of the litigation," *Mhany Mgmt.*, 819 F.3d at 600, whereas "mootness is 'standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness),'" *id.* at 603 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). To the extent that defendants are implicitly arguing that this case is now moot because there is no proof that plaintiffs ever paid any of the medical bills for Medicaid services that they received (*see* Defs.' Br. at 16-17), or because Fishman received partial reimbursement for his pre-complaint debt subsequent to filing suit (*see* Volmer Reply Decl. at ¶ 5, Ex. 1), defendants carry the burden of proving mootness because "'by the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal.'" *Mhany Mgmt.*, 819 F.3d at 603 (quoting *Laidlaw*, 528 U.S. at 191-92). Here,

"the alleged injury—a failure to reopen the defaulted fair hearings—stemmed not from the lack of [a default notice], but rather the named plaintiffs' own actions or failures to act" is entirely without merit. (Defs.' Opp'n Br. at 17.) "As previously held by this Court and confirmed by the Second Circuit, 42 U.S.C. § 1396a(a)(3) creates a right to a fair hearing before Medicaid benefits are revoked, which is enforceable through [42 U.S.C.] § 1983." *Fishman III*, 164 F. Supp. 3d at 411. Based on that statute, relevant federal regulations, and the State Medicaid Manual, this Court found in its decision granting the preliminary injunction that "the State, before dismissing an appeal as abandoned when the Medicaid appellant failed to appear at the hearing, must ascertain through a post-default notice whether the appellant wishes any further action on his request for a hearing." *Id*. The failure to provide such notice—and not the "failure to reopen the defaulted fair hearings"—is the injury that plaintiffs seek to remedy in this action, and there is no dispute that there is a "a causal nexus between the defendant[s'] conduct and the injury" at issue. *Rothstein*, 708 F.3d at 91.

Further, defendants' efforts to call attention to Sirikeshun's apparent knowledge of the means by which he could have sought to adjourn his fair hearing and Fishman's counsel's purported failure to seek an adjournment (Defs.' Opp'n Br. at 17-18) are irrelevant. Whether or not plaintiffs or their legal representatives were able to seek an adjournment of plaintiffs' fair hearings does not bear on defendants' failure to provide plaintiffs with notice of default prior to deeming their Medicaid appeals abandoned. That deficiency was unlawful and "fairly traceable" to defendants for standing purposes. *Rothstein*, 708 F.3d at 91.

In sum, plaintiffs had standing at the outset of this litigation based on (1) cognizable injury-in-fact due to impairment of their constitutional and statutory rights, as well as resulting economic harm; and (2) a causal nexus between those injuries and defendants' conduct.

IV. CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion for partial summary judgment. It is hereby ordered that defendants are permanently enjoined from dismissing administrative appeals of defaulting Medicaid appellants who are not given at least ten (10) days to respond to a written notice from defendants inquiring as to whether they would like their hearings rescheduled.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 29, 2017
       Central Islip, NY

\* \* \*

Plaintiffs are represented by Peter Vollmer of Vollmer & Tanck, Jericho Atrium, 500 North Broadway, Suite 149, Jericho, New York 11753. Defendants are represented by Susan M. Connolly, Kimberly Ann Kinirons, and Patricia M. Hingerton of the New York State Office of the Attorney General, 300 Motor Parkway, Suite 230, Hauppauge, New York 11788.